Jerry L. MORTON, Plaintiff,

v.

ASSOCIATED DRY GOODS
CORPORATION, d/b/a L.S.
Ayres, Defendant.

No. IP 90–2150–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 15, 1992.

Daniel C. McCarthy, Greenwood, Ind., for plaintiff.

Susan B. Tabler and Todd W. Ponder, Ice Miller Donadio & Ryan, Indianapolis, Ind., for defendant.

## MEMORANDUM ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TINDER, District Judge.

### I. *Overview*

After nearly thirty years in the employ of the defendant, Jerry L. Morton was fired. Morton has now turned to the courts for vindication and for compensation. Morton, however, has not brought a solitary lawsuit. Rather, Morton claims in state court that he was fired and is unsuitable for employment due to injuries sustained in a car accident. In this case in federal court Morton alleges that he was fired due to his employer's age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. As age is not an injury typically sustained in a car accident, it is clear that Morton is seeking to recover in two forums, against separate defendants, for the same injury (loss of his job), under mutually exclusive theories of recovery. It is also clear that Morton cannot be correct in both forums concerning the reasons for his termination. The first question considered in this entry is whether Morton's claims so divided and so juxtaposed can survive in this Court.

Because this Court has found that Morton's federal claim, although at war with his state claim, may nevertheless stand, this Court has also analyzed in this entry whether the substance of Morton's allegations in this Court can withstand the defendant's remaining motions for summary judgment which are based on the claimed insufficiency of the substance of Morton's age discrimination claims. Based on the applicability of the statute of limitations this Court has found that summary judgment is appropriate with respect to plaintiff's claim that he was unlawfully demoted. In addition, this Court has found that summary judgment should be granted on plaintiff's wrongful discharge claim because plaintiff has failed to establish a prima facie case of age discrimination within the meaning of the ADEA. Finally, with respect to plaintiff's claim of retaliatory discharge this Court finds that summary judgment is inappropriate.

Following is a recitation of the factual background of this case insofar as is necessary to support this Court's rulings on the defendant's summary judgment motions.

### II. *Factual Background*

The plaintiff, Jerry L. Morton, was employed by the defendant, L.S. Ayres ("Ayres"), for some thirty years prior to his termination on August 17, 1989. Mr. Morton held a number of supervisory and management positions with Ayres including the position of Flat Goods Manager which he held from 1976 until November, 1988. In November of 1988 Morton was transferred to the position of RTM Manager [1], a position which he held until his August, 1989 termination.

The November, 1988 transfer to the RTM Manager position involved a change in work responsibilities but no change in salary. Morton was opposed to the transfer and informed his superiors at the time of the transfer that he felt that he was being discriminated against because of his age. At the time of his transfer Morton contacted a representative at the Equal Employ-

---

**1.** The parties dispute whether Morton's title was "RTM Manager" or "RTM/Damage Room Manager" the distinction is not important for the purpose of this Court's rulings. What is relevant is the function performed in his job, not Mr. Morton's precise title.

ment Opportunity Commission ("EEOC") and was advised that he might have a claim against Ayres based on the transfer. Morton, however, neglected to pursue a claim for wrongful demotion until he filed a claim with the EEOC on September 29, 1989, a month after Morton was ultimately terminated following what the defendant describes as a reduction in the size of its work force ("reduction in force" or "RIF").

Some five months prior to his termination from Ayres Mr. Morton was involved in a car accident. In a state court action seeking damages for that accident Mr. Morton has claimed that he was forced to stop working at Ayres due to injuries suffered in the car accident.

### III. *Plaintiff's Pursuit of Mutually Exclusive Theories of Liability*

Mr. Morton's claim in state court is so inconsistent with his claim in this Court as to be troubling. Quite simply, either Mr. Morton's loss of employment was a result of a back injury allegedly suffered in a car accident (Mr. Morton's claim in state court) or his job was terminated by Ayres either for age discrimination (Mr. Morton's claim in this case) or because of a reduction in force (Ayre's defense in this case). Morton could not have been terminated for both of the reasons that he claims, and if he was terminated for the reason offered by Ayres he was not terminated because of any injury suffered in a car accident.

■ Of course, inconsistent theories of recovery may be pursued in the same lawsuit. *See* Fed.R.Civ.P. 8. Where inconsistent theories of recovery are advanced in the same case, however, there is no danger of a double recovery; the plaintiff may only recover once for any injuries that may have been suffered.

2. This seems a quite unlikely possibility given both the fact that Morton was not discharged until five months after he was injured and the fact that defendants have not raised plaintiff's alleged disability as a cause for terminating him.

3. This Court notes that while the plaintiff must be aware of his double dealing, there is no evidence in this Court's possession that would

This case presents a different matter. Inconsistent theories of liability have been pled in different lawsuits against different defendants. The potential for a double recovery is real and the situation is all the worse because the plaintiff's claims are incredibly incongruent.

If the plaintiff is to be believed he was both so incapacitated by the injuries suffered in his car accident that he was discharged because of those injuries[2] and he was terminated unlawfully because of his age. However, the unequivocal nature in which plaintiff states the cause of his termination in both lawsuits leaves no room for an argument that his termination had two causes; for if Ayres had cause to terminate him for his inability to physically perform his work, then, as defendant argues, Morton would be unable to establish a prima facie case of age discrimination because he could not show that he was performing up to his employer's legitimate expectations.[3]

Nevertheless, this Court does not fear an imminent miscarriage of justice. By pleading such wildly inconsistent claims plaintiff has, in effect, booby-trapped both of his lawsuits. Morton can expect searching cross examination and the charge by the defendants in both lawsuits that Morton was willing to undercut the truth in an effort to mine two profitable damage recoveries. This Court anticipates that when these tactics are brought to light for consideration by the fact-finder plaintiff's gold digging is likely to leave the jury with a bad taste and to leave plaintiff holding an empty bag.

■ Because of the inconsistencies in plaintiff's two cases defendant has asked this Court to weed out this lawsuit on summary judgment pursuant to the doc-

indicate that either of his two attorneys were aware of their client's subterfuge at the time the lawsuits were filed, nor is there an indication that they have orchestrated their client's two-faced explanations of the reason(s) for his employment termination; surely, they have not, because any sensible lawyer would see the futility and ethical impropriety of such manipulation of the truth.

trine of judicial estoppel. That doctrine, however, is not a sufficient spade to get this job done. Judicial estoppel is designed to prevent the courts from being abused "through cynical gamesmanship" wherein a party achieves success on one position then argues the opposite position in another suit "to suit an exigency of the moment." *Teledyne Industries, Inc. v. National Labor Relations Board,* 911 F.2d 1214, 1218 (6th Cir.1990). Judicial estoppel is not applicable here because Morton's position that he lost his job due to injuries suffered in a car accident has not yet been accepted by another court, as, for example, by a jury verdict.

An ironic flaw in our judicial system permits the plaintiff to swear one version of the reason for his termination from one side of his mouth in this litigation and to swear a completely inconsistent version from the other side of his mouth in the state tort suit. This system delays judgment day on such matters until the fact finder has had an opportunity to evaluate the credibility of such efforts. Accordingly, defendant's motion for summary judgment based on the doctrine of judicial estoppel is DENIED.

IV. *Applicability of the Statute of Limitations*

Ayres contends that Morton's age discrimination claims must be dismissed for failure to comply with the ADEA's statute of limitations. That statute provides that an ADEA claim must be filed with the EEOC:

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d).

■ Section 633(b) applies only when the state in which the alleged unlawful practice occurs has an internal agency charged with handling discrimination claims over which the EEOC has jurisdiction. Because the State of Indiana does not have such an internal agency a discrimination claim arising in Indiana must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful practice. Mr. Morton filed his charge of discrimination with the EEOC on September 29, 1989. He was transferred from his position as Flat Goods manager in November, 1988 and was terminated from his position as RTM Manager on August 17, 1989.

■ Thus, Mr. Morton did not file his claim with the EEOC until approximately ten months after he was allegedly demoted, well outside the statute's 180 day time limit. Accordingly, this Court finds that Morton's claim that he was unlawfully demoted is time barred. Morton contends, however, that he should be permitted to assert the wrongful demotion claim because he was told by Ayres officials that he was not being discriminated against by being moved from the Flat Goods area to the damage room. Morton asserts that it was not until he was terminated from his job altogether that he became aware that his demotion was the result of discriminatory motives. Morton claims that the denials of discriminatory motives made by Ayres' officials amount to fraudulent concealment sufficient to toll the running of the statute of limitations.

■ This Court concludes, however, that a denial of discriminatory intent is not by itself sufficient conduct to toll the statute. If merely denying discriminatory intent could toll the statute of limitations, the statute would be of no practical effect. All a potential age discrimination claimant would have to do to preserve an ADEA claim indefinitely would be to ask his/her employer whether the employee's age was a motivating factor in the adverse employment decision. The mere denial by the employer could then operate to suspend the statute of limitations regardless of the actual guilt or innocence of the employer. This Court does not read the ADEA's statute of limitations to be so bootless.

■ Moreover, it is quite clear in this case that within a short time after his transfer to the position of RTM Manager Mr. Morton had all the facts he now believes are sufficient to pursue an age discrimination claim based on his alleged demotion, save the knowledge that he would ultimately be terminated from his position in the RTM room. Mr. Morton has testified by deposition that he met with an EEOC counselor in November, 1988 and that that counselor told him that he probably had an ADEA claim. *See* Morton Dep. at 108. Apparently, Mr. Morton did not pursue an ADEA claim at that time for fear of jeopardizing his continued employment by Ayres. *Id.* at 109–110. In the face of this evidence Morton cannot survive summary judgment by contending that he was misled by Ayres officials regarding whether age was a factor in the decision to move him to a different job within the company. This Court will GRANT Ayres' motion for summary judgment on Mr. Morton's claim that he was wrongfully demoted.[4]

■ Ayres has also sought summary judgment on Morton's entire case based on the statute of limitations, arguing that, because Morton asserts a pattern of continuing wrongful conduct beginning with the alleged wrongful demotion, Morton was first injured at the time of his demotion and that the statute of limitations for each of his claims therefore began to run at the point of the initial demotion. This Court disagrees. The alleged wrongful conduct asserted by Morton, i.e., wrongful demotion, wrongful discharge and retaliatory discharge are separate and distinct wrongs that, while they may have been part of a pattern of wrongful conduct, are cognizable in their own right. The statute of limitations for each of these alleged wrong-

ful acts began to run when the wrongful acts themselves occurred, not before. Accordingly, in all other respects, the defendant's motion for summary judgment based on the statute of limitations is DENIED.

## V. *Sufficiency of Plaintiff's Age Discrimination Claims*

### A. Overview of the ADEA

It has been said that the "ADEA prohibits employers from discriminating against employees on the basis of *advanced* age." *Bechold v. IGW Systems, Inc.,* 817 F.2d 1282, 1284 (7th Cir.1987) (emphasis added). Employees between the ages of forty and seventy years old are covered by the Act. 29 U.S.C. § 631.

### 1. Alternative Methods of Proving Discrimination: Direct vs. Indirect

■ Mr. Morton's burden at trial, like that of any ADEA plaintiff, would be "to prove that he was discharged because of his age." *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). It would *not* be necessary for him to prove that, "age was the sole factor motivating [his] employer to discharge him." *Id.* Rather, Mr. Morton would have to prove that, "age was a 'determining factor,' in the sense that he would not have been discharged 'but for' his employer's motive to discriminate against him because of his age." *Id.* Mr. Morton would be entitled to prove discrimination either "directly," by "presenting direct or circumstantial evidence that age was a determining factor in his discharge," *id.,* or "indirectly" by using the burden shifting approach of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

---

4. While this Court's ruling precludes Morton from seeking damages for what he characterizes as a wrongful demotion, this Court notes that evidence of the internal job transfer may be relevant to demonstrate a pattern of discrimination in support of his wrongful discharge claim. *See Patton v. University of Chicago Hospitals,* 706 F.Supp. 627, 629 (N.D.Ill.1989) (evidence of pretermination discrimination which occurred outside the limitations period admissible "for the limited purpose of establishing [defendant's] discriminatory motive for terminating [plaintiff]"). Nevertheless, the remainder of this entry will ultimately reveal that the potential for other uses of evidence of an unlawful demotion has been rendered of purely academic interest because of the plaintiff's failure to establish a prima facie case on his wrongful discharge claim.

## 2. Indirect Method of Proof

■■■■ Under the burden shifting approach a plaintiff is initially required to prove a prima facie case of age discrimination. A prima facie case is established by proving: (1) that the plaintiff is in the protected age group, (2) that the plaintiff was qualified for the position he or she applied for, or, if already employed, that the plaintiff, at the time of the adverse employment action, was meeting the employer's legitimate expectations, (3) that an adverse employment action was taken against the plaintiff, and (4) that an individual not in the protected age group was hired in plaintiff's position or otherwise treated more favorably than the plaintiff. *Oxman v. WLS–TV*, 846 F.2d 448, 455 (7th Cir.1988); *La Montagne*, 750 F.2d at 1409. Once a prima facie case has been established a rebuttable presumption of discrimination arises and a *burden of production* is placed upon the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. After this reason has been produced, however, the presumption of discrimination is dissolved and, in order to prevail, the plaintiff must prove by a preponderance of the evidence "that the defendant's proffered reasons [or reason] are [is] pretextual." *Oxman*, 846 F.2d at 453.

Discrimination is rarely blatant or admitted and is, therefore, often difficult to prove. The value of the indirect method of proof to a plaintiff is that it permits a "plaintiff to prove his case by eliminating all lawful motivations, instead of proving directly an unlawful motivation." *La Montagne*, 750 F.2d at 1410. "A plaintiff employing the indirect method of proof may therefore prevail because the employer fails to advance the real reasons for its employment decision." *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 18 n. 7 (7th Cir.1987).

■■■■ So long as the employer's proffered reason is both honest and nondiscriminatory, however, his business judgment, no matter how erroneous, cannot be challenged. *See Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1322 (7th Cir.1989) ("the ADEA does not interfere with an employer's good faith business decisions"); *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988) ("inquiry is limited to 'whether the employer gave an honest explanation of its behavior'") (citation omitted); *Graefenhain*, 827 F.2d at 20 ("A business decision need not be good or even wise. It simply has to be nondiscriminatory"); *Bechold*, 817 F.2d at 1285 ("We will not reevaluate business decisions made in good faith").

■■■■ On the other hand, the price an employer may pay for proffering a "less than honest" reason for an ADEA plaintiff's discharge may be "an unnecessary age discrimination verdict." *Graefenhain* at 18 n. 7 *quoting Chipollini v. Spencer Gifts Inc.*, 814 F.2d 893, 899 (3rd Cir.1987), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). If "the employer offers a pretextual explanation for its conduct, this permits an inference of discrimination." *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 558–59 (7th Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). Accordingly, "under the burden shifting approach," if Mr. Morton produced evidence sufficient to convince the jury that it was "more likely than not that [L.S. Ayres] *did not* act for its proffered reasons, [L.S. Ayres'] decision [to terminate him would] remain ... unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent." *Ayala v. Mayfair Molded Products Corp.*, 831 F.2d 1314, 1319 (7th Cir.1987) *quoting Graefenhain* at 18 (emphasis added).

A plaintiff may "prove that the [defendant's] proffered reasons are a pretext, by showing ... that the employer's proffered explanation is unworthy of credence." *La Montagne*, 750 F.2d at 1409. Three ways identified by the Seventh Circuit by which a defendant may attempt to prove that his employer's explanation for his firing is "unworthy of credence" include showing: (1) "that the Company's reasons have *no basis in fact*, ..." (2) "that they were *not really factors motivating the discharge*, or, ..."

(3) "that they were ... *insufficient* to motivate the discharge." *La Montagne,* 750 F.2d at 1414–15 (footnote omitted) (emphasis added).

### B.  Plaintiff's ADEA Claims

Mr. Morton has submitted no direct evidence of discrimination and it is clear that he is relying upon the burden shifting, indirect method of proof to establish his case. Thus, the initial hurdle that Mr. Morton is required to clear in his case is to prove that he can satisfy the standards of a prima facie case.

The formulation of the prima facie case a plaintiff is required to prove differs slightly depending on whether the plaintiff alleges discrimination in hiring or discrimination in the context of a defendant's reduction of its work force. *See Oxman,* 846 F.2d at 453–55.  Mr. Morton claims discrimination emanating from his termination as part of an otherwise lawful reduction in force.  To establish a prima facie case in a RIF case a plaintiff must prove: (1) "that he was within the protected age group" (between forty and seventy years old) at the time of his discharge, (2) "that he was performing according to his employer's legitimate expectations," (3) "that he was terminated, and" (4) "that others not in the protected class were treated more favorably." *Oxman,* 846 F.2d at 455; *Smith,* 876 F.2d at 1318.[5]

Once a prima facie case has been established, an ADEA defendant must come forward with a business justification for its decision to terminate the ADEA plaintiff. In this case Ayres has submitted that economic necessity forced them to pursue a RIF of their personnel which resulted in the elimination of the position of RTM Manager.

Mr. Morton does not dispute that a RIF occurred but he contests the motive behind Ayre's decision to remove him as part of that reduction in force.  Mr. Morton contends that he was demoted to the RTM Manager position and subsequently fired as the result of a concerted effort to move him into a non-vital position and then terminate him due to his age.  Mr. Morton claims he is entitled to an age discrimination verdict based on three separate theories: (1) that he was demoted from his position as Flat Goods Manager to the position of RTM Manager as a result of his age and in order to facilitate his eventual termination for age based reasons [6], (2) that he was discharged from his position as RTM Manager due to his age and (3) that he was retaliatorily discharged from his position with Ayres for contacting the EEOC.

In its summary judgment motion the defendant has proffered a number of reasons why plaintiff's claims of age discrimination are insufficient to justify a verdict in his favor.  This Court will now consider each of these grounds for summary judgment advanced by the defendant.

### 1.  Whether plaintiff was was performing according to his employer's legitimate expectations

Besides invoking the doctrine of judicial estoppel defendant has tried, in a number of different ways, to turn the position taken by Morton in his state court lawsuit into an argument for summary judgment.  Later, this Court will address the contention that plaintiff cannot seek wage losses as damages because he has admitted that his losses are the result of injuries sustained in a car accident.  Now, this Court will address defendant's assertion that Morton cannot establish a prima facie case because he has admitted that he was no longer performing according to his employer's legitimate expectations.

In a similar context the Seventh Circuit has noted that a plaintiff's admission that the plaintiff was not discriminated against

---

**5.** The two elements of Mr. Morton's prima facie case that were challenged in the defendant's summary judgment motion are whether Morton was performing up to Ayre's legitimate expectations and whether other employees not in the protected class were treated more favorably than Morton.

**6.** This theory of recovery has been eliminated from this case by virtue of this Court's ruling on the statute of limitations issue.

is not conclusive with respect to a plaintiff's discrimination case. *See, e.g., Brown v. M & M/Mars,* 883 F.2d 505, 510 (7th Cir.1989) ("potentially damning admissions ... did not compel a finding of no discrimination as a matter of law"). That is because "[a] plaintiff's statement about what he *believes* is the reason for his firing does not necessarily prove that that belief is correct." *Id.* (emphasis original). The Seventh Circuit has reasoned that it is the subjective intent of the defendant, not the plaintiff, that is determinative on the question of discrimination and that the plaintiff may, therefore, prevail even if the plaintiff has admitted that there was no discrimination. *Id.*

Similarly, the guidelines for determining whether an employee is performing according to his employer's legitimate expectations are set by the employer. In this context it is not what Mr. Morton may feel about his performance that is relevant. Rather, what is significant is whether in reality Morton was meeting the legitimate expectations Ayres had for him.

There is some evidence before this Court, including the fact that Morton received pay raises, the fact that Morton was not fired until five months after the auto accident and the fact that poor performance is not a justification that has been offered by Ayres for Morton's termination, that indicates that Morton was meeting Ayres' performance expectations at the time that he was terminated. Thus, at best for defendants, there is a factual dispute concerning whether Morton was meeting Ayres legitimate employment expectations. Accordingly, defendant's motion for summary judgment on this ground is DENIED.

### 2. Whether plaintiff was replaced after the RIF

Defendant contends that it is entitled to summary judgment because Morton's position was not filled following Ayre's alleged RIF. Ayre's position, however, is somewhat confusing as a true reduction in force will *always* result in eliminated positions going unfilled. If ostensibly eliminated positions are later filled, obviously there has been no "reduction in force."

Yet, there can be a valid age discrimination claim in a reduction in force case. In order to establish a prima facie case following a RIF the plaintiff need only establish that younger employees were treated more favorably than the plaintiff rather than that the plaintiff's former position was filled by a younger employee. Although defendant's argument was poorly worded, it is clear that plaintiff understood that defendant's summary judgment motion challenged whether plaintiff could establish that younger employees were given preferential treatment. Indeed, plaintiff devoted almost four pages of his response to defendant's motion for summary judgment to this issue of whether other Ayres employees not in the protected class were treated more favorably than plaintiff following the elimination of Morton's position in the RTM room. *See* Plaintiff's Response at 20–23.

Plaintiff's response on this issue, however, was fatally deficient. Indeed, plaintiff failed to submit any evidence that others not in the protected class were treated more favorably than Morton. Although plaintiff identified a fairly substantial list of Ayres employees whose positions were eliminated and who were subsequently reassigned to other positions within the company, plaintiff failed to present evidence that these employees were treated more favorably than plaintiff because plaintiff submitted no evidence that he was more qualified than or even as qualified as the reassigned employees to fill their new positions. Plaintiff also failed to present any evidence that he requested to be considered for any of the positions filled by the reassigned employees or that it was an Ayres policy to offer a person similarly situated to plaintiff the opportunity to apply for positions similar to ones filled by the reassigned employees.

Without evidence that he was qualified to fill the positions ultimately filled by the younger employees Morton has no evidence that he was treated less favorably than those employees. Because Morton has

completely failed to show that younger employees were treated more favorably than he was he has not established a prima facie case of age discrimination flowing from his termination as part of the alleged RIF. *See Oxman*, 846 F.2d at 455–56. Accordingly, defendant's motion for summary judgment on the ground that plaintiff has failed to present evidence of a prima facie case is GRANTED and plaintiff's claim of wrongful termination in violation of the ADEA will be dismissed from this case.

3. Whether there is evidence that defendant knew plaintiff had contacted the EEOC

Although defendant asserts that there is no evidence that any relevant Ayres decisionmaker knew, prior to Mr. Morton's termination, that Morton had contacted the EEOC, the plaintiff has submitted deposition testimony that indicates that an Ayres decisionmaker was informed that Morton had contacted the EEOC prior to the date that Ayres terminated Morton. *See* Monday Dep. at 35. Accordingly, because there is a dispute of fact on this point summary judgment is not appropriate and Ayres' motion for summary judgment on this ground will be DENIED.

VI. *Sufficiency of Plaintiff's Intentional Infliction of Emotional Distress Claim*

Plaintiff has also advanced the claim that he is entitled to damages for emotional distress resulting from his termination. The defendant contends that the impact rule, the exclusive remedy provision of the worker's compensation act and the inability of the plaintiff to present any evidence of an intent to inflict emotional distress or of the type of outrageous conduct necessary to support a damage claim for emotional distress all justify summary judgment on plaintiff's attempt to recover damages for mental anguish.

Indiana's impact rule has been seriously diminished, *see Cullison v. Medley*, 570 N.E.2d 27, 30 (Ind.1991), and Indiana's worker's compensation remedy is exclusive only when the harm occurs during the course of employment—not the case here. However, this Court agrees with defendant that summary judgment is appropriate on the emotional injury aspect of plaintiff's claim because of the plaintiff's lack of evidence regarding intent to inflict emotional injury and the plaintiff's lack of evidence that the conduct involved in this case was of the outrageous nature necessary to support an emotional injury tort.

Indeed, plaintiff in large part failed to respond to defendant's position that there was no evidence of an intent to inflict emotional injury. This Court holds that the mere fact that agents of the defendant knew of plaintiff's wife's serious medical condition (the only evidence of malicious intent offered by plaintiff) does not constitute any evidence that the defendant *intended* to cause Mr. Morton emotional anguish by firing him. Plaintiff's failure to adequately contest defendant's assertion that plaintiff could not prove malicious intent justifies granting defendant's motion for summary judgment on the emotional distress issue. *See* Fed.R.Civ.P. 56 (summary judgment appropriate where evidence submitted to court fails to reflect a genuine issue of material fact). This Court's holding regarding the quantum of evidence necessary to establish an intent to cause emotional harm is in accord with the most recent holding of the Indiana Supreme Court on the subject of intentional infliction of emotional distress. *See Cullison*, 570 N.E.2d at 31. In *Cullison* the court held that a defendant's trespass into a plaintiff's home, even when accompanied by the defendant fondling a holstered gun with knowledge that the plaintiff "disliked" guns, was insufficient evidence to support an inference that the defendant intended to inflict emotional distress upon the defendant.

Accordingly, defendant's motion for summary judgment on Morton's claim for emotional distress damages will be

GRANTED and this claim as well will be dismissed.[7]

## VII. *Viability of Plaintiff's Wage Loss Claims*

Defendant contends that Morton is not entitled to pursue any wage loss claims because Morton admitted in the state court auto accident proceeding that his wage losses were caused by the auto accident. Defendant believes it is entitled to summary judgment in this respect "both on the basis of [Morton's] clear and unequivocal admissions in the state court proceeding, and on the doctrine of judicial estoppel." Defendant's Brief in Support at 23.

For the reasons already set forth in this entry, the doctrine of judicial estoppel is inapplicable. Nor will plaintiff's admission remove the question of plaintiff's wage losses from the jury. Morton's admission may, of course, be used against him, but it is merely a single item of evidence and does not conclusively decide the question.

## VIII. *Conclusion*

As a result of this Court's rulings on defendant's motions for summary judgment, the plaintiff's sole remaining claim is his claim for retaliatory discharge. All other aspects of plaintiff's claims will be dismissed.

ALL OF WHICH IS ORDERED.

---

7. Of course, damages for emotional distress are not permissible items of recovery under the ADEA. *See Pfeiffer v. Essex Wire Corp.,* 682 F.2d 684, 686–88 (7th Cir.1982) (ADEA damages limited to unpaid wages and in the case of a willful violation, an additional equal amount as liquidated damages), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982); *Patton,* 706 F.Supp. at 632 ("Under the ADEA, a plaintiff cannot recover damages for emotional suffering caused by age discrimination").